Summers, J.
The record is quite voluminous, and while, owing to the lapse of time, the memory of some of the witnesses- is indistinct, yet the following facts appear. • In 1854 a railroad company, a predecessor ' in title of the plaintiff in error, acquired for right of way a strip of ground, one hundred feet in width, west of the then village and west of and nearly parallel with the Athens and Zanesville road, now called Perry street in said village. Near the north end of this right' of way the road crossed over the right' of way to the west, and in 1855 the railroad company, in constructing its road, made a deep cut at the point whefe the road crossed the right of way, and, a little- south of the cut, it constructed a crossing at grade over its tracks, so that travelers on the road 'could cross its tracks and then pass north along its right of way until they again reached the road, and the road and *114 crossing were so used for about a year, until the railroad company built a bridge, ov'er * the cut, which was then used by travelers on the public road. In the deed for the right of way it was provided that the railroad company should construct for the grantor “a crossing place over said railroad track at same place where the elevation of the road is .at the same grade as the adjoining land.” Whether the grantor made use of this crossing does not appear, but it does appear that the railroad company constructed its track and a side-track on this right of way and, east of its track and just north of the crossing, built a station and planked the crossing over the tracks and erected a railroad crossing sign, and that the crossing was used by the public. In November, 1864, land adjoining this right of way on the west was laid out into town lots. It was called Armstrong’s Addition, and several streets in the addition were platted down to the right of way, and one of them, named Armstrong street, joined the right of way at the crossing. In December, 1864, the railroad company purchased a small triangular piece of land, lying between its right of way and Perry street. After Armstrong’s addition was laid out some potteries were built there and also some residences and a church. The railroad company laid additional tracks from time to time and planked them, and this crossing was used by persons transacting business at the station and as a way to and from Armstrong’s addition and they also crossed over the triangular strip between the crossing and Perry street. In 1890 the station burned down and the railroad company built a *115 new station, on the west side of its tracks and just south of the crossing, and the crossing was used as a way to and from the new station and continued to be used as' before. There is no evidence that the village council ever took any action respecting this crossing or so-called street. One witness testifies that at one time a ■ village street lamp was erected bn the line of Armstrong street, a little bit down on the railroad property, but that it was soon after moved back about on the line of the railroad property, and another witness testifies that when he was street commissioner he did a little work on this so-called street, but it does not appear that the railroad • company ever had any knowledge of it. This use of the crossing continued until 1901, when the railroad company moved its station to the east of the tracks and north of the location of its first station, and then tore up the planking and destroyed the crossing.
It is well settled that in order to deprive the owner of his property by a common law dedication it must clearly appear not only that he intended to and did give it to the public but also that the gift was accepted. That the railroad company intended to dedicate this so-called street or a way over its tracks and ground to the public does not clearly appear. Originally the crossing was constructed in performance of the engagement in the deed or to accommodate the traffic intercepted by the cut through the road, or for both purposes, and, after the bridge had been constructed, it is just as probable that the crossing was maintained solely for the accommodation of the patrons of the road as for the *116 public. No estoppel, so far as- the village is concerned, arises from the laying out of the Armstrong addition. The addition was not then in the village and the railroad company did not then own the triangular piece of land between the right of way and the road, and the fact that Armstrong street was laid’ out adjoining the crossing is not significant, for two streets parallel to Armstrong street were comprised in the addition, and on the plat of the addition neither of the streets is delineated as extending beyond its boundaries. .
Furthermore, an acceptance on the part of the village, is not shown. .It is said that the late cases rule that an acceptance may be implied* from public user, upon the assumption that the inhabitants are the principal and the corporate officials merely its agents, and that the principal may himself do what he might have done through the intervention of an agent. Elliott on Roads, and Streets (2d Edition), Sec. 150.
A somewhat. similar suggestion was made in the time of King James I. The usurpation of the court of high commission being checked, much to the disappointment of the king, by prohibition from the court of common pleas, it was suggested that the king in his own person should judge whatever cases he pleased, free from all risk of prohibition or appeal.' The reasoning, as given by Lord Campbell, was as follows: “The 'judges are but the delegates of your Majesty, and administer the law in your name. What may be done by the agent may be done by the principal; therefore, your Majesty may take what causes he may be pleased to determine *117 from the determination of the judges, and determine them yourself.” But the king was advised 'by Coke, C. J., all the judges concurring, that the king in his own person could not adjudge any cases either civil or criminal. Prohibitions Del Roy, 12 Coke’s R., 63.
In this state, however, local subdivisions, such as counties and towns, are themselves merely agencies of the state, possessing only delegated powers and the prescribed mode or manner of exercising them is the measure of the power. They can act only by their officers, and the duty to care for the roáds and streets and the liability for damages for neglecting to perform the duty can not be imposed upon them by proof of' user by the public but only by an acceptance by the authorities whose duty it would be to care for the .road or the street if it should be established.
But, roads and streets. may' be established by prescription (Elliott on Roads and Streets, 2d Ed., Sec. 169), and if the foundation of the right is as stated by Chief Justice Shaw, in Reed v. The Inhabitants of Northfield, 13 Pick., 94, neither an intention to dedicate nor an acceptance of the dedication is an element. Pie says: “We think it clear upon principle,'that public easements, as well as others, may be shown by long and uninterrupted use and enjoyment, upon the conclusive legal presumption from such enjoyment, that they were, at some anterior period, laid out and established by competent authority.” Does the evidence tend to prove a right by prescription? In City of Topeka v. Cowee, 48 Kan., 345, it is held that “user, to create a title by prescription to a public street, must be under a claim of right *118 by the public, adverse to the right of the owner, and continued without substantial interruption or change for a period equal to the statutory . limitation in respect to actions for the recovery of real estate.” This is the well established rule. Elliott, Sec. 175. In Pavey v. Vance et al., 56 Ohio St., 162, it is ruled that “where one uses a way over the land of another without permission as a way incident to his own land and continues to’ do so with the knowledge of the owner, such use is, of itself adverse, and evidence of a claim of right. And where the owner of the servient estate claims that the use was permissive, he has the burthen of showing it.” However, it is pointed out by Minchell, J., in the opinion, that a claim of right is not' consistent with a case where the possession is taken or held under a license or permission of the real owner.
This crossing was constructed for the accommodation of the grantor of the right of way, or of travelers on the public road whose passage had been interrupted by the excavation, or for both, and its use by them was by the implied invitation of the railroad company; subsequently it was to its interest to maintain it for the accommodation of its patrons and no other reason for its maintaining it is apparent and a presumption that the use was adverse does not arise from the fact that incidentally to this use, by those having implied invitation, it was used also by the. public. Root v. The Commonwealth, 98 Pa. St., 170; Boeres v. Strader, 1 Cincinnati Superior Court’ Reporter, 57, in which leave to file a petition in error in this court was refused. Kilburn v. Adams, 7 Metc., 33; Smith v. N. Y. & *119 N. E. R. R. Co., 142 Mass., 21; Irwin v. Dixion, 9 How., 10.
The judgment is reversed, the injunction is dissolved, the cross-petition is dismissed and the cause is remanded to the circuit court with instructions to grant the prayer of the plaintiff’s petition upon the undisputed facts.

Judgment reversed.

Shauck, C. J., Price, Crew, Spear and Davis, JJ., concur. .